UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re: | : | |
| GREGORY S. ZOPFI, | : | Case No. |
| | : | 1:18-bk-2556-HWV |
| Debtor. | : | |
| | : | |
| | : | |
| GREGORY S. ZOPFI, | : | Chapter 7 |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | Adv. Proc. No. |
| EDUCATIONAL CREDIT | : | 1:18-ap-00111 |
| MANAGEMENT CORPORATION, | : | |
| | : | |
| Defendant. | : | |

## **OPINION**

**November 25, 2020**

Through the instant adversary proceeding, Debtor/Plaintiff Gregory S. Zopfi seeks a determination that $124,672.00 of student-loan debt that he incurred to attend college between 1994 and 1997 is dischargeable in Chapter 7 bankruptcy because excluding "such debt from discharge . . . would impose an undue hardship on the debtor and the debtor's dependents" pursuant to 11 U.S.C. § 523(a)(3) and because the unique circumstances of his life meet the requirements for discharge outlined by our Court of Appeals in *In re Faish*, 72 F.3d 298 (3d Cir. 1995).

1

Because we find herein that Zopfi has failed to provide "a clear enough picture of his income and expenses to establish by a preponderance of the evidence that he would be incapable of maintaining a 'minimal standard of living' if forced to repay the student loans in questions," *see In re Lepre,* 466 B.R. 727, 727 (Bankr. W.D. Pa. 2012), *subsequently aff'd*, 530 F.App'x 121 (3d Cir. 2013), we necessarily find that he has failed to carry his burden to demonstrate that excluding "such debt from discharge . . . would impose an undue hardship on the debtor and the debtor's dependents" under 11 U.S.C. § 523(a)(3) as interpreted by *In re Faish*, 72 F.3d 298 (3d Cir. 1995). Accordingly, we find Zopfi's student-loan debt non-dischargeable and shall enter judgment in favor of Defendant Educational Credit Management Corporation.

## I. FACTUAL BACKGROUND

Between 1994 and 1997, Debtor/Plaintiff Gregory S. Zopfi ("Zopfi") attended college at ITT Technical Institute in San Diego, majoring in electronics engineering technology. (Doc. 48 at 20:11–21). To fund his education, Zopfi took out several loans which he consolidated in 1997 for a total loan of $28,696.00 at a fixed interest rate of 9.00%. (Doc. 44 at ¶ 8; Doc. 48 at 19:1–2, 19–20). The loan was to be repaid over a term of 240 months with the first payment to be made on August 23, 1997 and the last payment to be made in July 2017. (Doc. 48 at 19:9–

16). By its terms, total payments under the note would have amounted to $61,927. (*Id*. at 19:23).

Zopfi made periodic payments on the loan from August 1997 through October 2005, (*id*. at 22:10–13, 23:4–6, 98:11–19), was granted several periodic deferments in 2007 and 2008 due to losing his job, (*id*. at 23:17–23), and additional periods of forbearance between 2013 and 2017 while unemployed. (*Id*. at 26:13–19). Between 2015 and 2016, Zopfi made sporadic payments on the loan totaling $15,245. (*Id*. at 25:16–20).

In 2016, Zopfi's then-wife Jenny filed for divorce in California state court. (*Id*. at 66:11–13, 20). Throughout the divorce proceedings, Zopfi was not represented by counsel, (*id*. at 34:11–12, 69:13-24), and did not contest the divorce in any way—he did not prepare or file any documentation with the court regarding his personal expenses or income and did not challenge the court's subsequent support obligation calculations. Accordingly, the California state court entered a default judgment in September 2017 requiring Zopfi to pay child support in the amount of $2,606 per month for his two children "until further order of the court, or until each child has married, dies, is emancipated, reaches the age of 19, or reached the age of 18 and is not a full-time student, which ever first occurs." (Pl. Exh. 10 at 11; Doc. 48 at 75:4–14, 61:5–12, 74:13–18, 34:18-23). Zopfi was also required to pay spousal support to his ex-wife in the amount of $2,195 per month.

3

Case 1:18-ap-00111-HWV    Doc 53    Filed 11/25/20    Entered 11/25/20 11:01:19    Desc
Main Document    Page 3 of 13

(Pl. Exh. 10 at 13; Doc. 48 at 36:10–15). The default judgment also awarded Zopfi "any and all debts and obligations secured by the community property awarded" to him including: a 2007 GMC Denali, a 2013 Ford Mustang, a 2013 Nissan Ultima, all residential expenses, all vehicle expenses, car insurance, childrens' life insurance/savings, and childrens' health insurance. (Pl. Exh. 10 at 14; Doc. 48 at 37:15–25, 69:5–20). Based upon this award, Zopfi testified that he has been paying $150 a month for life insurance policies for his children, that he had been paying for their health insurance, (Doc. 48 at 44:9–14), and that he been paying for car insurance, gas, and monthly car payments for two vehicles driven by his children and his ex-wife. (*Id.* at 37:15-20, 38:19–25, 39:1–12, 39:16–21, 40:10–17, 62:5–19; 99:6–12). Zopfi also pays several thousand dollars a month in rent, groceries, and utilities to support the household in which his ex-wife and children live even though he does not live with them. (*Id.* at 42:3–12; 99:6–12). Moreover, although one of his children has since turned 18 and is not a full-time student, Zopfi continues to pay child support for him. (*Id.* at 75:19–23; 76:13–19). In the aggregate, Zopfi estimates that he pays roughly $8,500 dollars directly to his ex-wife each month. (*Id.* at 62:20–24).

After the divorce, Zopfi spent time living and working in Harrisburg, Pennsylvania, where he lived in a boarding house and paid approximately $500 a month in rent. (*Id.* at 46:7–18). According to Zopfi, he made every effort to

4

reduce his expenses by walking to work rather than owning a car and keeping his home furnishings simple notwithstanding his $80.00-per-hour position working as a Systems Engineer for the Commonwealth of Pennsylvania. (*Id*. at 29:23–30:1, 46:16–22). Zopfi eventually moved to Mechanicsburg, Pennsylvania and then moved to Brooklyn, New York where he now resides. (*Id*. at 47:1–19). Currently, in addition to providing for his ex-wife Jenny and his two children from that marriage, Zopfi pays rent for the Brooklyn apartment where he lives with his current wife, infant child, his stepson, and his mother-in-law, for the utilities for that apartment, and for his family's cell phone plan. (*Id*. at 48:3–9; 49:9–15, 50:9–11, 16–19). Zopfi also pays for regular living expenses in New York, including groceries and personal care items. (*Id*. at 49:15–20).

Relevant to the instant matter, Zopfi asserted at trial that he had explored several avenues to reduce his expenses before and after his divorce. Zopfi alleged that he was interested in modifying his monthly student loan payments and had investigated income driven repayment programs but explained that he did not apply because he felt that he did not meet the requirements due to his higher-than-average income. (*Id*. at 27:6–16). Moreover, shortly after the default spousal support order was entered, Zopfi alleges that he consulted several attorneys all of whom suggested that contesting the support order was not in his best interest because challenging the order could result in additional fees. (*Id*. at 95:14–21,

5

96:2–7; 45:22–46:1). As such, Zopfi never formally attempted to modify the support order entered by default. (*Id*. at 73:19–21). However, on cross-examination, Zopfi admitted that none of the attorneys he met with were licensed in California and that he could not understand why contesting the order could be to his detriment. (*Id*. at 74:1–12, 96:2–7).

On June 15, 2018, while living in Harrisburg, Zopfi filed a Chapter 7 voluntary bankruptcy petition in this Court. In his petition, Zopfi listed $262,531.95 in outstanding debt of which $124,672.00 was for student loans. Following a meeting of creditors pursuant to Federal Rule of Bankruptcy Procedure 341(a) on June 15, 2018, the appointed Chapter 7 Trustee filed a report of no distribution on July 30, 2018.

On September 27, 2018, Zopfi filed an adversary complaint in the above-captioned action against Defendant Nelnet, the entity Zopfi believed held the note associated with his student loans, seeking a determination that his student-loan debt was dischargeable in bankruptcy pursuant to 11 U.S.C. § 523(a)(3) and *In re Faish*, 72 F.3d 298 (3d Cir. 1995). On November 2, 2018, Educational Credit Management Corporation ("ECMC") moved to intervene as the holder of all rights, title, and interests in the loan that Zopfi sought to discharge. On the same day, the Court granted ECMC's motion and dismissed Nelnet as a Defendant in the case. Neither party filed any substantive pretrial motions and the Court held a one-day

trial on July 29, 2020 at which Zopfi was the only witness. Zopfi filed a post-trial brief on October 16, 2020, (Doc. 49), and ECMC filed a response on November 15, (Doc. 51). The matter is now ripe for disposition. For the reasons that follow, we find Zopfi's student-loan debt to be non-dischargeable and we shall enter judgment in favor of Defendant ECMC.

## II. DISCUSSION

Under the Bankruptcy Code, student loan debt may be discharged in bankruptcy only if "excepting such debt from discharge . . . would impose an undue hardship on the debtor and the debtor's dependents . . . ." 11 U.S.C. § 523(a)(8). In *Pennsylvania Higher Education Assistance Agency v. Faish*, 72 F.3d 298, 306 (3d Cir. 1995), the Third Circuit adopted the test for "undue hardship" outlined by the Second Circuit Court of Appeals in *Brunner v. New York Higher Education Services Corp.,* 831 F.2d 395 (2d Cir. 1987).

Under the *Brunner* test, student-loan debt is not dischargeable in bankruptcy unless the debtor can establish that: "(1) based on current income and expenses, [she] cannot maintain a minimal standard of living for herself and her dependents if she has to repay the loan; (2) additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the loan repayment period; and (3) debtor has made a good faith effort to repay the loan." *Faish*, 72

F.3d at 304–305 (quoting *Brunner*, 831 F.2d at 396). Importantly, each of the three prongs of the *Brunner* test must be satisfied before a discharge can be effectuated, *id*. at 306, and a debtor bears the burden of proof as to each prong by a preponderance of the evidence. *In re Brightful*, 267 F.3d 324, 327 (3d Cir. 2001). Finally, the Third Circuit has cautioned, "this test must be strictly construed: equitable concerns or other extraneous factors not contemplated by the test may not be imported into the analysis of 'undue hardship.'" *Id*. (citing *Faish*, 72 F.3d at 306). Thus, if a debtor fails to establish any one prong of the *Brunner* test, the Court need not address the other prongs. *See id*.

In the first prong of the *Brunner* test, "a minimal standard of living involves the elimination of extraneous or luxury expenses, the paring down of a debtor's expenditures." *In re Price*, 573 B.R. 579, 592 (Bankr. E.D. Pa. 2017). Indeed, by its terms, the Bankruptcy Code only allows for student loan discharge based upon "undue hardship"—as distinguished from "garden variety" hardship. *See In re O'Hearn*, 339 F.3d 559, 564 (7th Cir. 2003). In other words, some measure of proverbial belt-tightening by the debtor is expected. *See Faish*, 72 F.3d at 307 ("The financial straits of the bankruptcy petitioner in *Brunner* appear to have been far more serious than any short-term, belt-tightening that may be required of *Faish* in order to repay her student-loan obligation."). Nonetheless, "[i]t is well established that maintaining a minimal standard of living does not mean that

8

Debtor has to live at a poverty level to repay her student loan." *In re Alston*, 297 B.R. 410, 415 (Bankr. E.D. Pa. 2003).

In *Gerald S. Lepre v. United States Department of Education et al.*, the Bankruptcy Court in the Western District of Pennsylvania, the District Court sitting as an appellate court, and the Third Circuit all agreed that a debtor's student loan debt was non-dischargeable when the debtor failed to establish "a clear enough picture of his income and expenses to establish by a preponderance of the evidence that he would be incapable of maintaining a 'minimal standard of living' if forced to repay the student loans in questions." *In re Lepre*, 466 B.R. 727 (Bankr. W.D. Pa. 2012), *subsequently aff'd*, 530 F.App'x 121 (3d Cir. 2013). In short, the three different courts reasoned that inconsistencies, improper estimates, and discrepancies in the debtor's reporting of his income and expenses compelled the conclusion that the debtor had necessarily failed to carry his burden to demonstrate undue hardship and that his student-loan debt could therefore not be discharged. *Id*. at 732–733 (noting "that the Court cannot rely on the information in the Debtor's schedules" because Debtor's expenses listed on his schedules are "hopelessly out of date and have not been properly amended" and because of "several other inconsistencies in the Debtor's evidence and testimony, which prevent the Court from obtaining a clear picture of the Debtor's financial condition").

9

Case 1:18-ap-00111-HWV    Doc 53    Filed 11/25/20    Entered 11/25/20 11:01:19    Desc
Main Document    Page 9 of 13

In his bankruptcy petition, at trial, and in his post-trial brief, Zopfi asserts that he pays his ex-wife more than $8000 per month pursuant to a spousal and child support order entered by default in California state court. (Doc. 49 at 6). Zopfi admits that he did not participate in the court proceedings related to the order, (Doc. 48 at 69:5–16, 72:9–11), that he has never contested the order, (*id.* at 73:19–21), and that he has never asked an attorney licensed in California to explain its terms. (*Id.* at 73:8–18, 74:8–12, 96:2–7). Zopfi also admits that, notwithstanding his many material breaches of the order, his ex-wife has never brought him to court for violating the order even though she had threatened to do so on several occasions. (Doc. 48 at 93:1–8).[1] Indeed, at trial, Zopfi had a hard time explaining how the amounts he pays to his ex-wife fit into the terms of the order, (Doc 48 at 84:16-22),[2] and was unable to explain why he continues to pay child support for one of his children for whom he is plainly no longer required to

---

[1]  Q: So as you testified earlier on direct, if you don't pay under this, she can take you to court and get it added, or you could be put into jail, correct?
A: Um-hum, that's correct, yup.
Q: She's never done that, has she?
A: Not yet.
Q: Has she threatened to?
A: Yes, she has.

[2]  Q: Mr. Zopfi, to your knowledge under this agreement or under this divorce decree that was entered by default, did your wife take responsibility for any of your joint marital debt?
A: No.
Q: Did your wife take responsibility for any of her living expenses?
A: No.

10

do so. (Doc. 48 at 76:12-19).³ At bottom, Zopfi has failed entirely to demonstrate that a sizeable chunk of the more than $8000 per month that he provides to his ex-wife is required of him under the terms of the California support obligation. Thus, we are constrained to conclude that much of the money Zopfi provides to his ex-wife and children is more akin to a gratuitous gift than a domestic support obligation.

As such, in our view, Zopfi has failed to provide "a clear enough picture of his income and expenses to establish by a preponderance of the evidence that he would be incapable of maintaining a 'minimal standard of living' if forced to repay the student loans in questions." *In re Lepre*, 466 B.R. at 727. Indeed, Zopfi's proffer at trial and in filings before this Court evidences the same inconsistencies, improper estimates, and discrepancies that the Bankruptcy Court, the District Court, and the Third Circuit found in *Lepre* undermined the debtor's claim of "undue hardship." *See In re Lepre*, 466 B.R. at 727. At this point, the Court is unable to establish whether the expenses outlined at trial are "extraneous or luxur[ious]," or whether they fund Zopfi's "minimum standard of living." *In re*

---

³   Q: Is your—has anyone told you that you still have to pay child support for Alexander?
A: No, they haven't, but I still continue.
Q: And that's a voluntary decision you made, correct?
A: That's correct.
Q: You understand at law, you don't have to.
A: That's right.

11

*Price*, 573 B.R. at 592. Therefore, as in *Lepre*, we are constrained to conclude that Zopfi has failed to carry his burden to demonstrate by a preponderance of the evidence that excluding his student-loan debt "from discharge . . . would impose an undue hardship on the debtor and the debtor's dependents" under 11 U.S.C. § 523(a)(3) as interpreted by *Faish*.

In closing, we hasten to note that Zopfi's failure to even investigate the legal or factual necessity of his payments to his ex-wife by participating in the divorce proceedings or consulting a divorce attorney licensed in California after the fact also demonstrates his failure to engage in the proverbial belt-tightening necessary to warrant a discharge of a student loan obligation under the Bankruptcy Code's "undue hardship" standard. *See Faish*, 72 F.3d at 307 ("The financial straits of the bankruptcy petitioner in *Brunner* appear to have been far more serious than any short-term, belt-tightening that may be required of *Faish* in order to repay her student-loan obligation."); *In re Price*, 573 B.R. at 592 (noting that debtor must demonstrate an effort to "par[e] down . . . [his] expenditures" in order to discharge student-loan debt in bankruptcy). Although we are sympathetic to Zopfi and are conscious of his noble efforts to limit his personal spending to provide the best life he can to his ex-wife and children, the Bankruptcy Code does not allow him to do so at the expense of a creditor's non-dischargeable claim.

Accordingly, because we find that Zopfi has failed to provide "a clear enough picture of his income and expenses to establish by a preponderance of the evidence that he would be incapable of maintaining a 'minimal standard of living' if forced to repay the student loans in questions," *see In re Lepre,* 466 B.R. at 727, and because we therefore necessarily find that he has failed to carry his burden to demonstrate by a preponderance of the evidence that excluding "such debt from discharge . . . would impose an undue hardship on the debtor and the debtor's dependents" under 11 U.S.C. § 523(a)(3) as interpreted by *Faish*, we shall deny Zopfi's request to discharge his student-loan debt in his Chapter 7 bankruptcy proceeding, and shall enter judgment in favor of Defendant ECMC.[4]

## III. CONCLUSION

In accordance with the foregoing, Debtor/Plaintiff Gregory S. Zopfi's request to discharge his student-loan debt in his Chapter 7 bankruptcy proceeding shall be denied and we shall enter judgment in favor of Defendant Educational Credit Management Corporation. An appropriate Order shall issue.

Dated: November 25, 2020

By the Court,

*Henry W. Van Eck*
Henry W. Van Eck, Chief Bankruptcy Judge (CD)

---

[4] Because we find that Zopfi has failed to meet the first prong of the *Brunner* test, we need not discuss the other two. *See In re Brightful*, 267 F.3d 324, 327 (3d Cir. 2001).